OPINION OF THE COURT
Irving Fudeman, J.
The petitioner brings this CPLR article 78 proceeding to obtain certain public documents from the respondent pursuant to article 6 of the Public Officers Law.
On December 10, 1982, petitioner filed a request with the respondent under the New York State Freedom of Information Law (Public Officers Law, §§ 84-90) seeking “all records relating to the Fall/Winter 1982 drilling into areas adjacent to the Hyde Park landfill in the Towns of Niagara and Lewiston, New York, including (1) copies of all daily, weekly and monthly monitoring and/or inspection logs prepared by Health Department personnel and dealing with Occidental contractor activity (2) copies of the results of all machine monitoring tests conducted to determine whether the drilling activity resulted in the release of chemical vapors, odors, or particulates at the site, (3) information identifying the monitoring equipment’s detection level for those tests and (4) individual and summary *964 Health Department reports relating to the Fall/Winter Hyde Park drilling.”
In answer to the request, by letter dated December 20, 1982, the respondent stated that due to the number of requests received and the volume of photocopying involved, it would take approximately 30 days to complete the request. On January 25, 1983, petitioner commenced this article 78 proceeding to obtain the requested documents. As of January 25,1983, the petitioner had received no documents from the respondent. Then by letter dated January 28, 1983, the respondent provided certain material. One of the documents supplied was a memorandum from “Hawley” to “Kim” dated October 20, 1982. Portions of this memorandum were deleted. The respondent stated that various other documents would be forthcoming. It stated that it was not providing the handwritten daily field notes of respondent’s employees regarding drilling activities in and adjacent to the Hyde Park landfill area or the drafts of the air monitoring report relating to airborne chemical contaminants in the Hyde Park landfill area; or a memorandum dated October 20, 1982 from E. Marta Sachey, Esq. to Peter Millock, Esq., both counsel for respondent. The respondent still refuses to turn over these documents, as well as the deleted portions of the “Hawley” to “Kim” memorandum. Respondent still has not provided the documents it stated were forthcoming. It has not turned over any documents dated beyond December 16, 1982. In addition, the petitioner questions whether the respondent has informed him of all the records which are in existence.
As to the documents which respondent indicated were forthcoming, to wit, the Department of Health Weekly Field Report, December 13,1982 to December 17,1982, the Department of Health Weekly Field Report, October 25, 1982 to October 29, 1982 and the report on air monitoring for installation of landfill overburden monitoring wells, it would seem that sufficient time has elapsed that these documents should have been typed or prepared and forwarded to petitioner. Therefore we direct that these documents, in whatever state of preparation they may exist, be provided to the petitioner forthwith. If respondents wish to *965 indicate no such records exist, we direct that it communicate such fact to petitioner, forthwith.
To be certain that respondent has informed the petitioner of all records, which are in existence, respondent shall submit a list to petitioner of all documents in its possession related to petitioner’s demand. This list shall include all documents that are in existence as of the present time. If respondent has not previously acknowledged the existence of certain of these documents and feels that some of them are exempt, it must submit to petitioner a full and complete description thereof. This description shall be by affidavit and such affidavit shall give a detailed analysis of the documents in such a way that the exemption will be demonstrated.
As to the respondent’s claim that the handwritten field notes, the drafts of the air monitoring report and the deleted portions of the “Hawley” to “Kim” memorandum are exempt, we cannot agree. The purpose of the Freedom of Information Law is to allow maximum access to documents (Miracle Mile Assoc. v Yudelson, 68 AD2d 176). The respondent has the burden of proving that records are exempt from disclosure if it denies access to them. The Public Officers Law states that “[i]n the event that access to any record is denied pursuant to subdivision two of section eighty-seven of this article, the agency involved shall have the burden of proving that such record falls within the provisions of such subdivision two” (§ 89, subd 4, par [b]).
The affidavits submitted by respondent do not support an exemption and do not sustain this burden. Respondent’s major argument as to the handwritten field notes and the drafts of the air monitoring report is that it need not supply them because the factual material contained therein was supplied in other records provided to the petitioner. This is hardly an acceptable reason to withhold the material. Certainly petitioner is entitled to examine and use these records as he sees fit even though he has other records which may contain the same information.
The respondent “may refuse to produce material integral to the agency’s deliberative process and which contains opinions, evaluations, deliberations, policy formulations, *966 proposals, conclusions, recommendations or other subjective matter” (Miracle Mile Assoc. v Yudelson, supra, p 182). It does not appear from the affidavits submitted by respondent that the handwritten field notes or the drafts of the air monitoring report or the deleted portions of the “Hawley” to “Kim” memorandum contain such material. Therefore respondent must provide petitioner with these documents.
The memorandum dated October 20,1982 from E. Marta Sachey, Esq. to Peter Millock, Esq. is a different matter. This is a memorandum from an attorney for respondent to the respondent’s general counsel and is based upon communications between the attorney for respondent and respondent’s staff. In this instance the court finds that the public’s right to know must bow to the attorney-client privilege. (See CPLR 4503, subd [a].) While it is true that the affidavits submitted by respondents do not expressly show that the communications with the respondent’s attorney were confidential, such can be inferred from the background of this case and the surrounding circumstances contained in the record.
In December of 1979, the United States of America sued Hooker Chemical & Plastics Corp. because of Hooker’s operation and maintenance of the Hyde Park landfill. Subsequently the State of New York was made a party to that lawsuit. On April 30,1982 the Honorable Judge John T. Curtin issued an order approving a settlement agreement of that litigation. On that same date Judge Curtin granted the motion of College Heights Property Owners Association to intervene as a plaintiff in the litigation. The College Heights Property Owners Association is composed of individuals and families residing in the area of the Hyde Park landfill and the Bloody Run Creek. Petitioner in the instant proceeding is one of the counsel to the College Heights Property Owners Association. The Hyde Park settlement agreement requires that Hooker drill a series of wells both in the Hyde Park landfill itself and along certain vectors specified in the agreement. In the fall of 1982 Occidental Chemical Corp. (previously known as Hooker Chemical & Plastics Corp.) hired Rochester Drilling Corporation to drill the landfill and vector wells. Roch *967 ester Drilling Corporation has worked on this project since that time and continues to work on this project. During the fall and winter of 1982 Hyde Park landfill drilling program, the respondent assigned agency personnel to monitor the activities taking place at the landfill site.
The memorandum from Sachey to Hillock concerned itself with the health problems of a resident of the Hyde Park area which were attributed to the drilling activities at the Hyde Park landfill. Certainly respondent’s staff intended their communications to their attorney on this subject to be confidential. Furthermore there is no doubt that the memorandum was prepared for ongoing litigation. The memorandum is therefore exempt from disclosure.
It should not have been necessary for the court to search the record to infer confidentiality and to learn that the “Sachey” to “Hillock” memorandum was prepared for litigation. This should have been clearly delineated in the affidavits submitted by respondent. The affidavits were also insufficient as to the other documents claimed by respondent to be exempt from disclosure. They did not contain the detailed analysis required to support an exemption. However an in camera inspection by the court of the withheld documents should not be used routinely to overcome these deficiencies. Rather it is a rare case when such an inspection should be directed (Miracle Mile Assoc. v Yudelson, 68 AD2d 176, supra; Vaughn v Rosen, 484 F2d 820). It is not appropriate in the instant proceeding.
Finally the court finds that the handwritten field notes, the drafts of the air monitoring report and the “Hawley” to “Kim” memorandum are records of clearly significant interest to the general public and that the respondent lacked a reasonable basis in law for withholding these records. Accordingly the petitioner is entitled to reasonable attorney’s fees. Petitioner may submit affidavits with regard to his attorney’s fees for this proceeding and respondent may submit affidavits in response thereto.