PETITION FOR WRIT OF MANDAMUS JOURNAL ENTRY AND OPINION
{¶ 1} The Municipal Construction Equipment Operators' Labor Council ("Council") the relator, has filed a complaint for a writ of mandamus. The Council seeks an order from this court which requires the City of Cleveland ("City"), the respondent, to provide copies of records that were originally requested for review pursuant to R.C. 149.43. The Council also requests the award of attorney fees. The City has filed two separate motions for summary judgment, which we grant in part for the following reasons. In addition, we award the Council a portion of its request for attorney fees.
 {¶ 2} In April 2003, members of the Council received notice of "a significant increase in the money being charged by Cleveland for providing health insurance to them." On April 16, 2003, the Council made a request for the following records pursuant to R.C. 149.43:
 {¶ 3} "(1) All documents received by Cleveland from or sent by it to the provider or administrator of this health insurance, during the last 36 months, which: (a) memorializes or refers to the per family, married couple and/or individual employee expense, and any actual or proposed change in the per family, married couple and individual employee expense for the provision of that health insurance, and/or (b) memorializes or refers to the summary plan descriptions with respect to that health insurance.
 {¶ 4} "(2) The summary plan descriptions with respect to this insurance for this 36 month period;
 {¶ 5} "(3) All documents which memorialize or refer to how Cleveland determined the amount of the increase in health insurance costs and/or charges that is described in the first paragraph of his letter."
 {¶ 6} On June 3, 2003, the Council received twelve records from the City which contained the following information: (1) rates for single and individual health insurance plans for 2001 and part of 2000 as provided by Kaiser Permanente of Ohio; (2) lists of premiums charged to the City of Cleveland by Medical Mutual of Ohio that became effective on April 1, 2003; (3) lists of rates charged by Medical Mutual of Ohio for single and family contracts for April 1, 2000 to March 31, 2003; (4) bar graph showing trends in renewal rates for benefits between April 1, 1997, and March 31, 2001, as provided by Medical Mutual of Ohio; (5) list of medical discounts provided by Medical Mutual of Ohio for non-Medicare claims; (6) lists of claims paid by Medical Mutual of Ohio between April 1, 2000, and March 31, 2001; (7) lists of renewal rates as provided by Medical Mutual of Ohio for the period of March 31, 2001, and April 1, 2003; (8) lists of renewal rates as provided by Medical Mutual of Ohio for the period of April 1, 1999, and March 31, 2000; (9) savings for administrative services provided by Medical Mutual of Ohio for the "prisoners program" for the period of August 1, 1998 to September 30, 1999; and (10) rate adjustments provided by Medical Mutual of Ohio for the period of August 1, 1997 to July 31, 1998.
 {¶ 7} On June 20, 2003, the Council filed a verified complaint for a writ of mandamus on the basis that the City had not produced all available public records as originally requested. On August 12, 2003, this court conducted a guidelines hearing, at which time the parties were instructed to file briefs. In addition, the City was instructed to provide this court with a complete index of all records related to the Council's request, and to further provide under seal, copies of any disputed records or copies of records that contained partial redactions. On September 9, 2003, the City filed a complete index of records. On October 16, 2003, the City filed under seal, five copies of all disputed records for the purpose of an in-camera inspection by this court. On August 5, 2003, the City filed a motion for summary judgment. On November 12, 2003, the City filed a second motion for summary judgment which contained the affidavit of Thomas A. Antonello, the manager for Employee Relations/Benefits for the City. On November 18, 2003, the Council filed an opposition brief which contained the affidavit of the Council's retained counsel, Stewart D. Roll. On January 14, the City filed a supplemental brief which contained two separate affidavits executed by Thomas A. Antonello. This matter is now ripe for disposition.
 {¶ 8} In order for this court to render a decision with regard to the Council's complaint for a writ of mandamus, we must decide the following: (1) whether the Council's request for public records has been fulfilled; (2) whether the documents produced under seal are exempt from disclosure; and (3) whether the Council is entitled to attorney fees. Before this court is permitted to issue a writ of mandamus, the Council must establish that: (1) the Council possesses a clear legal right to the relief prayed for; (2) the City possesses a clear legal duty to perform the act requested; and (3) the Council possesses no plain and adequate remedy in the ordinary course of the law. State ex rel.Berger v. McMonagle (1983), 6 Ohio St.3d 28, 451 N.E.2d 225. It must also be noted that a motion for summary judgment requires that the moving party set forth the legal and factual bases supporting the motion. The moving party must delineate with specificity the portions of the record which demonstrate the absence of a genuine issue of material fact. Dresher v. Burt
(1996), 75 Ohio St.3d 280, 662 N.E.2d 264. Specifically, the party moving for summary judgment must satisfy a three-part test: (1) there exists no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion which is adverse to the party that is opposed to the motion for summary judgment. Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 375 N.E.2d 46.
 {¶ 9} In the case sub judice, the City has filed two separate motions for summary judgment, a supplement to the motions for summary judgment, and an index of records provided to the Council. The index of records, the exhibits, and the affidavits attached to the City's motions for summary judgment and supplement to the motions for summary judgment, demonstrate that numerous documents have been provided to the Council since the initial delivery of twelve documents which occurred on or about June 3, 2003. In fact, the three affidavits executed by Thomas A. Antonello clearly provide that all documents, which fall within the parameters of the Council's public records request of April 16, 2003, have been delivered. The Council's attempt to create a genuine issue of material fact, vis-a-vis the claim that the City possesses additional undisclosed documents through the affidavit of Stewart D. Roll, must fail. The Council's belief that additional documents exist without some other demonstrative evidence which substantiates the existence of additional unproduced documents, does not alter the fact that the City has indicated that all requested public records have been provided. In fact, the Council does not challenge the affidavits of Thomas A. Antonello, which provide that all requested documents have been provided. Palmer v. Dove, Franklin App. No. 02AP-889, 2003-Ohio-1181. Thus, we find that the City has demonstrated that there exists no genuine issue as to any material fact since all requested public records, that are in possession of the City, have been provided to the Council. The City is entitled to a partial summary judgment as a matter of law because the Council's request for public records has been rendered moot. State ex rel.Gantt v. Coleman (1983), 6 Ohio St.3d 5, 450 N.E.2d 1163; Stateex rel. Jerningham v. Cuyahoga County Court of Common Pleas
(1996), 74 Ohio St.3d 278, 658 N.E.2d 723.
 {¶ 10} We must next address the issue of whether the documents provided under seal to this court for an in-camera inspection, are exempt from disclosure based on the attorney-client privilege exception, the trade secret exception, or the handwritten personal notes exception. R.C. 149.43(A)(1) defines a "public record" as "any record that is kept by any public office, including, but not limited to, state, county, city, village, township, and school units, except that `public record' does not mean any of the following: * * * records the release of which is prohibited by state or federal law." InState ex rel. Thomas v. Ohio State Univ. (1994),71 Ohio St.3d 245, 643 N.E.2d 126, the Supreme Court of Ohio held that records of communications between attorneys and their government clients pertaining to the attorney's legal advice are exempt from disclosure under R.C. 149.43, since the release of these records is prohibited by state law. See, also, TBC Westlake, Inc. v.Hamilton Cty Bd. of Revision (1998), 81 Ohio St.3d 58,689 N.E.2d 32; Woodman v. Lakewood (1988), 44 Ohio App.3d 118,541 N.E.2d 1084. Trade secrets remain exempt from disclosure under the "state or federal law" exception contained in R.C. 149.43.State ex rel. Besser v. Ohio State Univ. (2000),87 Ohio St.3d 535, 721 N.E.2d 1044. In addition, the handwritten personal notes of a public employee or official are not public records. State ex rel. Cranford v. Cleveland, Cuyahoga App. No. 83534, 2004-Ohio-633.
 {¶ 11} Upon an in-camera inspection of the documents provided to this court under seal, we find the following:
 {¶ 12} Doc. 1 — "August 3, 2001 draft from Duvin, Cahn 
Hutton (DCH), city counsel to former Labor Relations Manager Jeff Patterson re: vision care and broker responsibilities." Entire document exempt from disclosure under attorney-client privilege exception.
 {¶ 13} Doc. 2 — "March 12, 2001 fax from DCH to City re: Union notification." Entire document exempt from dislcosure under attorney-client privilege exception.
 {¶ 14} Doc. 3 — "April 27, 2001 memo from DCH to City." Entire document exempt from disclosure under attorney-client privilege exception and handwritten personal notes exception.
 {¶ 15} Doc. 4 — "April 27, 2001 letter from DCH to City updating proposal received April 20, 2001." Entire document exempt from disclosure under attorney-client privilege exception and trade secret exception.
 {¶ 16} Doc. 5 — "January 17, 2002 cover letter from DCH to City re: enclosures." Entire document exempt from disclosure under attorney-client exception.
 {¶ 17} Doc. 6 — "December 20, 2001 letter from DCH to City and Medical Mutual changing Broker-of-record." No exception.
 {¶ 18} Doc. 7 — "Fax dated December 14, 2001 from city to DCH re: Law Department inter-office correspondence, with counsel's handwritten notes." Page five of document (Current Benefits) not exempt. Balance of document exempt from disclosure under attorney exception, handwritten personal notes exception, and trade secret exception.
 {¶ 19} Doc. 8 — "Identical document as #7 with different hand written (sic) notes from DCH." Page five of document not exempt. Balance of document exempt from dislcosure under attorney-client exception, handwritten personal notes exception, and trade secret exception.
 {¶ 20} Doc. 9 — "December 5, 2001 fax from DCH to City re: Vision Benefits." No exception.
 {¶ 21} Doc. 10 — "October 11, 2001 fax from DCH to City re: Attachments counsel advises City to use in preparing Agreements with carriers." Page five of document (Current Benefits) not exempt. Balance of document exempt from disclosure under attorney-client exception and trade secret exception.
 {¶ 22} Doc. 11 — "October 2, 2001 cover letter from DCH to City re: Original RFP responses." Entire document exempt under attorney-client exception.
 {¶ 23} Doc. 12 — "September 7, 2001 fax from DCH to City re: Freedom of Information Act." No exception.
 {¶ 24} Doc 13 — "August 30, 2001 letter from DCH to City referenced in #10 above." Page four of document (Current Benefits) not exempt. Balance of document exempt form disclosure under attorney-client exception and trade secret exception.
 {¶ 25} Doc. 14 — "August 15, 2001 fax from DCH to City re: coverage for all ratified bargaining units." No exception.
 {¶ 26} Doc. 15 — "See #14 above." No exception.
 {¶ 27} Doc. 16 — "August 14, 2001 letter from DCH to City re: Final report and recommendations on request for proposal process." Entire document exempt from disclosure under attorney-client privilege exception and trade secret exception.
 {¶ 28} Doc. 17 — "July 25, 2001 memorandum from DCH to City re: Overview of proposed changes in benefit with hand written (sic) attorney notes." Entire document exempt from disclosure under attorney-client privilege exception, trade secret exception, and handwritten personal notes exception.
 {¶ 29} Doc. 18 — "Same as #1 above with attorney's different hand written (sic) notations." Entire document exempt from disclosure under attorney-client privilege exception, trade secret exception, and handwritten personal notes exception.
 {¶ 30} Doc. 19 — "July 18, 2001 fax from City to DCH re: Proposed benefit changes." Entire document exempt from disclosure under attorney-client privilege exception and trade secret exception.
 {¶ 31} Doc. 20 — "June 18, 2001 letter and attachment from DCH to City re: Revised 19-month Kaiser rates." Entire document exempt from disclosure under attorney-client privilege exception and trade secret exception.
 {¶ 32} Doc. 21 — "May 30, 2001 letter from Public Council (PUC) to City re: Labor negotiations." No exception.
 {¶ 33} (22) Doc. 22 — "May 21, 2001 fax from City to DCH re: Revised PUC proposal." Entire document exempt from disclosure under attorney-client privilege exception and trade secret exception.
 {¶ 34} (23) Doc. 23 — "May 21, 2001 fax referenced in # 22 with attorney hand written (sic) notes." Entire document exempt from disclosure under attorney-client privilege exception, trade secret exception, and handwritten personal notes exception.
 {¶ 35} (24) Doc. 24 — "May 18, 2001 letter from DCH to City re: Final report on request for proposal." Entire document exempt from disclosure under attorney-client privilege exception and trade secret exception.
 {¶ 36} (25) Doc. 25 — "May 16, 2001 letter and attachment from DCH to City re: Preferred Pharmacy Network." No exception.
 {¶ 37} (26) Doc. 26 — "May 11, 2001 letter from DCH to City re: Draft of Final report to request for proposal." Entire document exempt from disclosure under attorney-client privilege exception and trade secret exception.
 {¶ 38} (27) Doc. 27 — "April 24, 2001 fax from DCH to City re: Drafts of letters to Council officials regarding health plan." No exception.
 {¶ 39} (28) Doc 28 — "April 24, 2001 fax from City to DCH re: Draft of #27 with attorney notes." No exception.
 {¶ 40} (29) Doc. 29 — "April 20, 2001 fax from DCH to City re: above #27-28." No exception.
 {¶ 41} (30) Doc. 30 — "April 18, 2001 fax from DCH to City re: Counsel communications with carriers concerning dental benefits." Entire document exempt from disclosure under attorney-client privilege exception.
 {¶ 42} (31) Doc. 31 — "Same as #30 but referencing separate communications with carriers on same subject matter." Entire document exempt from disclosure under attorney-client privilege exception.
 {¶ 43} (32) Doc. 32 — "April 17, 2001 fax from DCH to City re: Modification of Request for Proposal — Dental Benefits." Entire document exempt from disclosure under attorney-client privilege exception.
 {¶ 44} (33) Doc. 33 — "March 30, 2001 letters (27) from City to individual bargaining units re: Health Care Meeting." No exception.
 {¶ 45} (34) Doc. 34 — "March 23, 2001 Fax from DCH to City summarizing Employee Benefits Committee meeting." Entire document exempt from disclosure under attorney-client privilege exception.
 {¶ 46} (35) Doc. 35 — "April 27, 2001 letter from DCH to City re: Update on bid proposals received to date." Entire document exempt from disclosure under attorney-client privilege exception and trade secret exception;
 {¶ 47} (36) Doc. 36 — "August 14, 2001 letter from DCH to City re: Draft of final report on request for proposal process." Entire document exempt from disclosure under attorney-client privilege exception and trade secret exception.
 {¶ 48} (37) Doc. 37 — "May 11, 2001 letter from DCH to City re: Draft of final report on request for proposal process." Entire document exempt from disclosure under attorney-client privilege exception and trade secret exception.
 {¶ 49} Based upon our review of the documents provided under seal, we find that the following items are not exempt under any exception as provided in R.C. 149.43 and must be provided to the Council: (1) Doc. 6; (2) page five of Doc. 7; (3) page five of Doc. 8; (4) Doc, 9; (5) page five of Doc. 10; (6) Doc. 12; (7) page four of Doc. 12; (8) Doc. 14; (9) Doc. 15; (10) Doc. 21; (11) Doc. 25; (12) Doc. 27; (13) Doc. 28; (14) Doc. 29; and (15) Doc. 33. The remainder of the documents, as provided under seal, are not public records and are exempt under the exceptions of attorney-client privilege, trade secret, and handwritten personal notes.
 {¶ 50} Finally, we must determine whether the Council is entitled to attorney fees. In State ex rel. Olander v. French
(1997), 79 Ohio St.3d 176, 680 N.E.2d 962, the Supreme Court of Ohio examined the issue of the award of attorney fees in a public records case and held that:
 {¶ 51} "The award of attorney fees in a public records case is not automatic. R.C. 149.43(C) allows a court to use its discretion in awarding such fees. State ex rel. Fox v. CuyahogaCty. Hosp. Sys. (1988), 39 Ohio St.3d 108, 529 N.E.2d 443. In granting or denying attorney fees, the court should consider the reasonableness of the government's failure to comply with the public records request and the degree to which the public will benefit from release of the records in question. State ex rel.The Warren Newspapers, Inc. v. Hutson (1994), 70 Ohio St.3d 619,626, 640 N.E.2d 174, 180. * * *" Id, at 179.
 {¶ 52} Herein, the vast majority of the public records provided to the Council were made available after the filing of a complaint for a writ of mandamus. The City, however, established through the affidavits attached to its motions for summary judgment and reply to the brief in opposition to motion for summary judgment that the failure to disclose the requested public records was not intentional but the result of a misconception on the part of Thomas A. Antonello, the Employee Relations/Benefits Manager for the City, Department of Personnel and Human Resources. In addition, the majority of records provided under seal were indeed exempt under the exceptions of attorney-client privilege, trade secret, or personal notes. The award of attorney fees is considered punitive and is employed to punish the party that has refused to take a rational stance with regard to the release of public records. Warren Newspapers,Inc., supra, at 180. The initial stance of the City, in not delivering the requested records to the Council, can be considered rational, based upon the affidavits of Thomas A. Antonello. We thus determine that the Council has only partially met the first prong of the two part test as established inOlander, supra.
 {¶ 53} The Council has not attempted to establish the degree to which the public benefits from the release of the requested public records. We determine that the release of the records in the present case confers very little benefit, if any, upon the public. In fact, the majority of any benefit conferred by the release of the public records falls upon the Council, not the general public. Cf. State ex rel. Multimedia, Inc. v. Snowden
(1995), 72 Ohio St.3d 141, 647 N.E.2d 1374; State ex rel.Multimedia, Inc. v. Whalen (1990), 51 Ohio St.3d 99,554 N.E.2d 1321. Any benefit that inures to the public is minimal at best. This court, however is cognizant of the fact that many of the public records provided to the Council were not delivered until after the filing of the complaint for a writ of mandamus. Therefore, we hold that the Council is entitled to attorney fees based upon the actual time expended by the Council's attorney in the prosecution of the complaint for a writ of mandamus. Attorney fees in the amount of $3,089.75, for the following legal services provided by the Council's attorney in prosecution of the complaint for a writ of mandamus, are granted: (1) review and modify draft complaint for writ of mandamus — $252; (2) revise and edit verified affidavit and complaint for writ of mandamus — $116.25; (3) review and revise verified affidavit and complaint for writ of mandamus — $108.50; (4) draft brief in opposition to City's motion for summary judgment — $1,134; (5) review and revise brief in opposition to motion for summary judgment — $93; (6) review and revise brief in opposition to motion for summary judgment — $462; and (7) prepare and take deposition of Thomas A. Antonello — $924.
 {¶ 54} Accordingly, we grant the City's motions for summary judgment in part and issue a writ of mandamus, in part, on behalf of the Council. The City is ordered to deliver to the Council, within ten days of the date of this entry, all records that were delivered under seal and determined to be public records. In addition, the Clerk's office is ordered to reseal all remaining exempt records, originally provided under seal, and to return said records to the City after sixty (60) days beyond the journalization of this judgment. Finally, we award attorney fees in the amount of $3,089.75 to the Council.
 {¶ 55} The writ is granted in part and denied in part.
Cooney and Calabrese, Jr., JJ., concur.